**RIC–WIL, INC.**

v.

**FIRST PENNSYLVANIA BANKING AND TRUST COMPANY et al.**

**Civ. A. No. 72–2468.**

United States District Court,
E. D. Pennsylvania.

United StatesDistrict Court,

Jan. 5, 1973.

Fred C. Aldridge, Jr. and James A. Young, Philadelphia, Pa., for plaintiff.

Miles Shore, Philadelphia, Pa., for First Pennsylvania Banking & Trust.

David Sykes, Philadelphia, Pa., for Arthur C. Crimmins.

I. Grant Irey, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Walter G. Arader.

F. Ross Crumlish, Philadelphia, Pa., for J. Campbell Collins.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This is an action based on diversity of citizenship wherein the plaintiff, Ric-Wil, Inc., alleges that it is a corporation organized pursuant to the laws of Ohio, where it has its principal place of business. Ric-Wil seeks to preliminarily and permanently enjoin the defendants from

disbursing certain funds in an account in the defendant First Pennsylvania Banking and Trust Company alleging that the funds are trust funds in which plaintiff has a beneficial interest. It is alleged that the Bank is a corporation organized pursuant to Pennsylvania law, and has its principal place of business in Pennsylvania. It is also alleged that all the individual defendants are citizens of Pennsylvania. Arthur C. Crimmins is the President of Pennsylvania Utilities Investment Corporation ("PUIC"), a corporation currently in Chapter XI bankruptcy proceedings. Walter G. Arader is the Secretary of Commerce of the Commonwealth of Pennsylvania. J. Campbell Collins is the Chairman of the City of Wilkes Barre Industrial Development Authority ("Authority"). Currently before the Court are the defendants' motions to dismiss, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure alleging, *inter alia*, that this Court lacks jurisdiction to determine the merits of the plaintiff's claim in a plenary action because the fund is subject to the exclusive jurisdiction of the Bankruptcy Court pursuant to Section 311 of the Bankruptcy Act, 11 U.S.C. § 711. The defendants also claim that this action should be dismissed pursuant to Rule 12(b)(7), Federal Rules of Civil Procedure, for failure of the plaintiffs to join the receivers in bankruptcy as indispensable parties.

Plaintiff's complaint in this action was filed on December 15, 1972. On December 19, 1972, after hearing in open Court, this Court denied plaintiff's petition for a temporary restraining order and entered the following Order:

## ORDER

AND NOW, this 19th day of December 1972, pursuant to the Motion of the Plaintiff for a preliminary injunction, it is hereby

ORDERED that, pursuant to the Federal Rules of Civil Procedure, Rule 65(a)(2), the trial of the action on the merits is advanced and consolidated with the hearing on the Motion, which is hereby scheduled for Wednesday, January 3, 1973 at 9:30 A.M. in Courtroom No. 13 of this United States Courthouse.

It is further ORDERED that Ric-Wil, Inc., or its authorized representative, be and is hereby authorized to make personal service of the Complaint herein and a copy of all other papers which have been filed of record as of the date of this Order.

It is further ORDERED that briefs on the issue of the Court's subject matter jurisdiction over the instant action shall be filed, in duplicate, by all parties on or before January 2, 1973.

It is further ORDERED that proposed Findings of Fact and Conclusions of Law, with briefs in support thereof, shall be filed, in duplicate, by all parties on or before January 2, 1973.

On January 3, 1973 oral argument was heard on the defendants' motions to dismiss; and for the purpose of these motions only, the parties stipulated on the record such facts as were considered necessary for the Court to determine the issues raised by the motions to dismiss. Briefs were submitted, and the Court continued the trial on the merits. This opinion is dispositive of the issues raised by the motions to dismiss.

In June 1972 the steam heat system of the Wilkes Barre Steam Heat Company ("Steam Heat Company") suffered extensive damage as a result of the devastating floods which inundated portions of the Commonwealth of Pennsylvania. On August 18, 1972, the Commonwealth of Pennsylvania loaned $2,500,000.00 to the City of Wilkes Barre Industrial Development Authority ("Authority" which executed a note in that amount, dated August 18, 1972, payable to the Commonwealth of Pennsylvania on or before November 18, 1972, in which the Authority agreed that it would cause the loan proceeds to be loaned, concurrently, to the Steam Heat Company, Public Utilities Investment Corporation and Internation-

al Service Industries, Inc., and it would require those corporations "to use the loan proceeds to refurbish and/or replace the flood-damaged boilers and distribution system" of Steam Heat Company.

Concurrently, on August 18, 1972, Authority loaned the $2,500,000.00 to Steam Heat Company, PUIC and ISI, which corporations executed a note in that amount, payable to Authority on or before November 18, 1972, and in which the said corporations agreed to "use the loan proceeds to refurbish and/or replace the flood-damaged boilers and distribution system" of Steam Heat Company.

On the same day, August 18, 1972, the Authority assigned to the Commonwealth of Pennsylvania, without recourse, the note executed by Steam Heat Company, PUIC and ISI.

On the same day, August 18, 1972, PUIC and The First Pennsylvania Banking and Trust Company ("Bank") entered into an Agreement labeled "Escrow Agreement", whereby PUIC agreed to deposit the proceeds of the $2,500,000.00 loan with Bank in an "Escrow Deposit," which funds would be disbursed by Bank to a designated payee only upon receipt of a voucher from PUIC incorporating a certification that the requested disbursement was to be used for the purposes contained in the form of note from the Authority to the Commonwealth of Pennsylvania, and signed by the President of Utilities (Arthur C. Crimmins), the Secretary of Commerce of the Commonwealth of Pennsylvania (Walter G. Arader), or their designated representatives. The Agreement was signed by PUIC and Bank and consented to in writing by Steam Heat Company and ISI. The account set up by Bank pursuant to said agreement was, and still is, "Public Utilities Investment Corporation—Wilkes Barre Steam Heat Co. Escrow Account."

Ric-Wil alleges that subsequent to August 18, 1972 it was informed of the $2,500,000.00 loan and the procedures for disbursement to be used to refurbish the steam distribution system of the Steam Heat Company, and in reliance thereon delivered pipe to the Steam Heat Company between the dates of September 8, 1972 and October 26, 1972, for which pipe it has not been paid the sum of $40,629. Ric-Wil claims that the $400,000.00 in the bank account is a trust fund set up for payment to suppliers of materials to the Steam Heat Company.

On November 8, 1972 Steam Heat Company, Pennsylvania Utilities Investment Corporation ("PUIC") and four other related corporations filed for an arrangement under Chapter XI of the Bankruptcy Act in the United States District Court for the Eastern District of Pennsylvania. On December 5, 1972, International Services Industries, Inc. ("ISI") and three other affiliated companies also filed Chapter XI petitions, and the proceedings were consolidated for administrative purposes under Civil Action No. 72–714.

On November 10, 1972, the Court entered an Order naming Samuel S. Baxter and Harold J. Conner, Esq. as Receivers for the debtor corporations and restraining all persons, firms, corporations, and creditors from commencing or countinuing suits against the debtors or "in any wise interfering with the exclusive possession and control by the Receivers of said property of the Debtors."

On November 27, 1972, upon notice to the Commonwealth of Pennsylvania and several other parties, but without notice to Ric-Wil, the Referee entered an Order authorizing the Receivers to expend $254,000 for the repair and refurbishing of the Steam Heat Company, and for that purpose to draw upon the fund of approximately $400,000 on deposit with The First Pennsylvania Banking and Trust Company in the account entitled "Public Utilities Investment Corporation—Wilkes Barre Steam Heat Co. Escrow Account" (the "Escrow Fund").

On December 14, 1972, Ric-Wil, the plaintiff in the instant proceedings, filed

with the Referee its petition for temporary, preliminary and final injunctive relief and an order declaring that the Escrow Fund of approximately $400,000 is a trust fund for the benefit of the creditors who had provided labor and materials to the Steam Heat Company and is not the property of the debtor.

On December 14, 1972, the Referee entered an Order denying the petition of Ric-Wil for a temporary restraining order and fixed January 16, 1973 as the date for a hearing, which date was later changed to January 8, 1973 by the Referee.

On December 15, 1972, the Plaintiff filed its petition with this Court requesting an order temporarily restraining the Receivers from using the funds in said escrow account pending a hearing before the Referee in Bankruptcy, and on the same day this Court, after hearing, denied the petition. An Appeal was then taken, and on December 26, 1972 the Court of Appeals likewise denied Plaintiff's petition for a temporary restraining order.

This Court now determines that the Bankruptcy Court has exclusive jurisdiction over the $400,000.00 fund. It is property in the possession of the Bankruptcy Court, and the Bankruptcy Court has exclusive jurisdiction of said fund. 1 Collier on Bankruptcy, ¶2.06, pp. 152–157. It is there stated, at pp. 155–157:

> Once acquiring proper possession of the bankrupt's property, the court is vested with exclusive jurisdiction, within the limits prescribed by the Bankruptcy Act, to determine all liens and interests affecting the estate, and to prevent, by proper orders, the doing of anything that will, at any stage of the proceeding, tend to embarrass the court in the equitable distribution of the estate of the bankrupt.

Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, gives the Court, in Chapter XI proceedings, "exclusive jurisdiction of the debtor and his property, wherever located." The effect of Section 311 on the Bankruptcy Court's jurisdiction is analyzed in 8 Collier on Bankruptcy, ¶ 3.02, p. 176 et seq., as follows:

> Section 311 gives the Court in which the [arrangement] petition is filed 'exclusive jurisdiction of the debtor, and his property, wherever located.' That jurisdiction over property rests on ownership of property, as distinguished from possession. There is no comparable provision in Chapters I to VII. With some exceptions, where a third party in an ordinary bankruptcy proceeding under Chapters I to VII has possession of the property involved and asserts a substantial adverse claim thereto, the bankruptcy court does not acquire summary jurisdiction over a controversy with respect to that property, even though ownership of the property is in the bankrupt. As a result of § 311, however, the court in a proceeding under Chapter XI has summary jurisdiction over a controversy in that situation . . . ."

It is the law of this Circuit that a bank account in the debtor's name is property over which the Bankruptcy Court has summary jurisdiction. In re Penn Central Transportation Company, 453 F.2d 520 (3d Cir. 1971). Although the Penn Central case was decided under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205, the basis of the decision was the provision in § 77 that the Court shall have exclusive jurisdiction of the debtor and its property, wherever located. This is the same provision we find in § 311 of the Act governing arrangements.

The Escrow Agreement provides that the funds shall be disbursed by Bank to a designated payee only upon receipt of a voucher from PUIC incorporating a certification that the requested disbursement was to be used for the purposes contained in the form of note from the Authority to the Commonwealth of Pennsylvania. The agreement also provides that the voucher must be

signed by the President of Utilities (Arthur C. Crimmins), the Chairman of the Authority (J. Campbell Collins), and the Secretary of Commerce of the Commonwealth of Pennsylvania (Walter G. Arader), or their designated representatives. The Escrow Agreement is signed by PUIC and Bank and consented to in writing by Steam Heat Company. The name of the account as it appears in Bank's records is "Public Utilities Investment Corporation—Wilkes Barre Steam Heat Co. Escrow Account." The general rule is that an escrow account held by a third person in the name of the bankrupt is subject to the summary and exclusive jurisdiction of the Bankruptcy Court. In 2 Collier on Bankruptcy, ¶23.06, pp. 505, 506, it is stated:

> Where a third person holds possession of the bankrupt's property, and makes no adverse claim to it, that person will be subject to summary jurisdiction even though others make claims adverse to the bankrupt.

In the matter of *Goldman,* 5 F.Supp. 973 (S.D.N.Y.1933), the bankrupt, pursuant to an agreement made prior to bankruptcy, had deposited shares of stock in escrow in settlement of a suit, which were to be delivered to the bankrupt at the expiration of a stated time. Before the time fixed for delivery, other parties to the agreement filed suit in the state court against the bankrupt and escrowee to rescind the agreement. The Trustee in Bankruptcy filed a petition in the Bankruptcy Court to compel the escrow agent to turn over the stock (as to which the escrow agent made no objection) and to restrain the plaintiffs in the state court from proceeding there without prejudice to the pursuit of their rights in the Bankruptcy Court. The Court found for the Trustee in words appropriate to the instant case:

> Property held for the bankrupt by another who makes no claim to it may be summarily collected by the bankruptcy court, despite the fact that third persons make claims adverse to the bankrupt [citations omitted].

This is on the theory that the bankruptcy court came into constructive possession of the property when the petition was filed, and as to property in its possession the court may determine the rights of claimants in summary proceedings . . .. The custody of the bankruptcy court is prior in point of time and draws to that court all controversies of the property.

In the case of In re Bake-Rite Consolidated, 12 F.2d 468 (N.D.Cal.1925), it was held that the Bankruptcy Court acquired summary and exclusive jurisdiction over property which a state commissioner of corporations, prior to bankruptcy, had ordered to be deposited in escrow with a bank.

By its Order of November 27, 1972, the Bankruptcy Court took jurisdiction over the escrow desposit. It authorized the expenditure by the Receivers of $254,000.00 of such escrow funds for the repair of the Steam Heat Company and directed that the money be withdrawn upon the Receivers' certification and upon the same signatures except that the Receivers are substituted for the President of debtor corporation.

We cannot conceive of a more complete assumption of jurisdiction over property by a Bankruptcy Court. It was done without any objection by the State, the Authority or the debtors. Accordingly, it is clear that by virtue of the provisions of the Bankruptcy Act and the law in this Circuit the Bankruptcy Court has summary and exclusive jurisdiction over the $400,000.00 deposit upon which plaintiff is seeking to impose a trust, particularly since in this case the record shows that the parties who were in possession of the funds voluntarily submitted the funds to the jurisdiction of the Bankruptcy Court.

■ Furthermore, the plaintiff, Ric-Wil, has consented to the adjudication of its claim by the Bankruptcy Court, since on December 14, 1972 it presented its petition to the Referee in Bankruptcy seeking, *inter alia,* to impress the $400,000.00 escrow fund with a trust in

its favor. It is an established principle of bankruptcy law that an adverse claimant who submits his claim to the Bankruptcy Court for adjudication consents to the summary jurisdiction of the Court and cannot thereafter complain.

In 2 Collier on Bankruptcy, ¶23.08, pp. 547, 548, it is stated:

> Where an adverse claimant to property voluntarily submits the question of his claim for determination by the bankruptcy court, jurisdiction is conferred by consent, and the trustee or receiver cannot be heard to object. Nor may the claimant himself thereafter question the exercise of such jurisdiction.

In James Talcott, Inc. v. Glavin, 104 F.2d 851 (3 Cir. 1939) it was said:

> It is a well established principle of law that an "adverse claimant may waive his right to a trial of his claim in a plenary suit rather than by summary proceedings" and that he does so irrevocably when he "comes into the bankruptcy court of his own motion and asks it to determine the question of title  .  .  .".

Therefore, the Court concludes that, even if the plaintiffs had a right to a plenary determination of their claim on the ground that a trust was created, this right was waived when the petition for a declaration that the alleged trust fund was not within the debtor's estate was filed in the Bankruptcy Court.

The opinion of this Court that the Bankruptcy Court has exclusive jurisdiction does not leave the plaintiffs in this action without a forum for determination of their alleged claim of trust. Currently pending before the Referee is the hearing scheduled for January 8, 1973 on the claim that the $400,000.00 is a trust fund for payment of those who furnished materials to the Steam Heat Company. The determination of the Referee in Bankruptcy in this matter may become a subject for review by this Court at a later date.

There is an additional reason for this Court to decline jurisdiction over the alleged trust fund. Plaintiff has not joined the Receivers, Samuel S. Baxter and Harold J. Conner, Esq., as parties to this action presumably because the November 10, 1972 Order of Referee Goldhaber prohibits all persons including creditors from commencing suits against the debtors or "in any wise interfering with the exclusive possession and control by the Receivers of said property of the Debtors." The Receivers are indispensable parties pursuant to Rule 19(a) and Rule 19(b) of the Federal Rules of Civil Procedure which provides that if such parties cannot be made a party:

> the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second; the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

It is clear that if the relief sought were granted it would indeed interfere with the Receivers' control of the debtors' property. The Receivers are presently acting under the Referee's Order of November 27, 1972, which provides that the money in the account can be withdrawn upon the Receivers' certification and upon the same signatures except that the Receivers are substituted for the President of debtor corporations. Any Order issuing from this Court granting the relief requested would subject the receivers, as well as defendants Arader, Collins and the Bank, to an irreconcil-

able conflict, clearly prejudicial to the defendants, the receivers and the debtors' estate.

Accordingly, for all the reasons stated herein, the following Order is entered:

## ORDER

And now, this 5th day of January 1973, it is ordered that this action is dismissed.