In re LEWIS JONES, INC., et al.,
Bankrupts.

No. 72-714.

United States District Court,
E. D. Pennsylvania.

Nov. 30, 1973.

See also D.C.Pa., 362 F.Supp. 919.

Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for bankrupts.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the motion of Ric-Wil, Inc. ("Ric-Wil") for an injunction pending appeal. Ric-Wil seeks to enjoin the Commonwealth of Pennsylvania ("Commonwealth"), the Trustees in Bankruptcy, the First Pennsylvania Banking and Trust Company ("Bank"), and Modular Energy Systems, Inc. ("purchaser"), as well as the purchaser's officers, agents and nominees from releasing or withdrawing or permitting withdrawal of certain funds which it contends are trust funds for the benefit of certain creditors of the bankrupt Wilkes Barre Steam Heat Company. The Bank is the depository of the fund. The approval of the Secretary of Commerce of the Commonwealth was required to make expenditures from the fund by the orders of the Bankruptcy Court of November 27, 1972 and January 8, 1973. The Commonwealth was the original source of the alleged trust fund. The purchaser acquired all of the assets of Wilkes Barre Steam Heat Company at the Trustees' sale and included in the purchase price of $2,740,000 was "all of the right, title, and interest of the bankrupt and the Trustees in" the said fund ("escrow fund").

In June 1972 the steam heat system of Wilkes Barre Steam Heat Company suffered extensive damage as a result of the devastating floods which inundated portions of the Commonwealth. On August 18, 1972, the Commonwealth loaned $2,500,000 to the City of Wilkes Barre Industrial Development Authority ("Authority") which executed a note in that amount, dated August 18, 1972, payable to the Commonwealth. In the note the Authority agreed that it would cause the loan proceeds to be loaned, concurrently, to Wilkes Barre Steam Heat Company, Public Utilities Investment Corporation ("PUIC") and International Service Industries, Inc. ("ISI"), and it would require these corporations "to use the loan proceeds to refurbish and/or replace the flood-damaged boilers and distribution

system" of Wilkes Barre Steam Heat Company.

On August 18, 1972, the Authority loaned the $2,500,000 to Wilkes Barre Steam Heat Company, PUIC, and ISI, which corporations executed a note in that amount payable to the Authority. In the note, PUIC, ISI and Wilkes Barre Steam Heat Company agreed to "use the loan proceeds to refurbish and/or replace the flood-damaged boilers and distribution system" of Wilkes Barre Steam Heat Company. On the same day, the Authority assigned to the Commonwealth, without recourse, the note executed by Wilkes Barre Steam Heat Company, ISI and PUIC. Also, the same day, PUIC and the Bank entered into an agreement labeled "Escrow Agreement," whereby PUIC agreed to deposit the proceeds of the $2,500,000 loan with the Bank in an "Escrow Deposit," which funds would be disbursed by the Bank to a designated payee only upon receipt of a voucher from PUIC incorporating a certification that the requested disbursement was to be used for the purposes contained in the note from the Authority to the Commonwealth and signed by the President of PUIC (Arthur C. Crimmins), the Secretary of Commerce of the Commonwealth (Walter G. Arader), or their designated representatives. The "Escrow Agreement" was signed by PUIC and the Bank and consented to in writing by Wilkes Barre Steam Heat Company and ISI. The account set up by the Bank pursuant to agreement was, and still is, "Public Utilities Investment Corporation—Wilkes Barre Steam Heat Co. Escrow Account."

Ric-Wil alleges that subsequent to August 18, 1972 it was informed of the $2,500,000 loan and the procedures for disbursement to be used to refurbish the steam distribution system of Wilkes Barre Steam Heat Company, and in reliance thereon, delivered pipe to the Wilkes Barre Steam Heat Company for which pipe it has not been paid. Ric-Wil claims that the escrow fund is a trust fund set up to pay to suppliers of materials to Wilkes Barre Steam Heat Company.

On November 8, 1972 Wilkes Barre Steam Heat Company, PUIC and four other related corporations filed for an arrangement under Chapter XI of the Bankruptcy Act in the United States District Court for the Eastern District of Pennsylvania. On December 5, 1972 ISI and three other affiliated companies also filed Chapter XI petitions, and the proceedings were consolidated for administrative purposes under Cause No. 72–714.

On November 27, 1972, upon notice to the Commonwealth, the Bankruptcy Court entered an order authorizing the Receivers to expend the sum of $172,550.00 from "retained funds" claimed to be a part of the alleged trust fund for certain essential repairs to avoid a shutdown of three of the debtor corporations.

On December 14, 1972, Ric-Wil filed with the Bankruptcy Court its petition for temporary and permanent injunctive relief and for an order declaring the escrow fund and the sums traceable to it to be impressed with a trust in favor of it and other creditors who had provided labor and materials to Wilkes Barre Steam Heat Company. On the same day, the Bankruptcy Judge entered an Order denying the application of Ric-Wil for temporary relief, and fixed January 16, 1973 as the date for a hearing, which date was later advanced to January 8, 1973. On December 15, 1972 Ric-Wil filed a petition with this Court for a temporary restraining order pending said hearing in the Bankruptcy Court, which petition was denied on the same day. An appeal was taken, and on December 26, 1972 the Court of Appeals likewise denied Ric-Wil's petition for such a temporary restraining order.

On December 15, 1972 Ric-Wil filed a complaint in this Court (Ric-Wil, Inc. v. First Pennsylvania Banking and Trust Company, 352 F.Supp. 782), alleging jurisdiction based on diversity of citizenship seeking temporary, preliminary and permanent injunctive relief in connec-

tion with the escrow fund and the sums traceable to it. On December 19, 1972 this Court denied Ric-Wil's petition for temporary relief and consolidated the trial on the merits with the hearing for a preliminary injunction, and scheduled the hearing for January 3, 1973, at which time this Court heard oral argument on the defendant's motion to dismiss the civil action, Ric-Wil, Inc. v. First Pennsylvania Banking and Trust Company, for lack of jurisdiction and continued the trial on the merits. On January 5, 1973, this Court granted the defendant's motion to dismiss the civil action, holding that the escrow fund and the proceeds traceable to it were within the exclusive jurisdiction of the Bankruptcy Court. 352 F.Supp. 782.

On December 21, 1972 the Bankruptcy Judge entered an order which authorized the Receivers to borrow $325,000 from the "retained funds" claimed to be a part of the alleged trust fund for the purpose of continuing the operation of Lewis Jones, Inc., Overbrook Steam Heat Company, Longacre Park Heating Company, Wilkes Barre Steam Heat Company and Scranton Steam Heat Company.

On January 8, 1973 the Bankruptcy Judge held a hearing on Ric-Wil's petition to declare the escrow fund a trust fund. On January 26, 1973 the Bankruptcy Judge entered an Order which dismissed Ric-Wil's petition to declare the escrow fund a trust fund, and held that the balance in the escrow fund and the sums traceable to it were not trust funds for Ric-Wil or other creditors of the Wilkes Barre Steam Heat Company.

Petitions for review of the aforesaid orders of the Bankruptcy Court were filed, but Ric-Wil did not seek any stay of the Bankruptcy Court proceedings.

On June 18, 1973 Wilkes Barre Steam Heat Company was adjudicated bankrupt.

On August 17, 1973 this Court, after hearing, affirmed the aforesaid Orders of the Bankruptcy Judge which came before the Court on certificates of review, and held that the balance in the escrow fund and the proceeds traceable to it were not trust funds for Ric-Wil or any other creditors of Wilkes Barre Steam Heat Company.

On September 13, 1973, Ric-Wil filed a notice of appeal to the United States Court of Appeals for the Third Circuit. It did not, however, seek to stay the Orders of the Bankruptcy Court, or the Order of this Court of August 17, 1973 which affirmed them.

On August 1, 1973 the Trustees of Wilkes Barre Steam Heat Company filed a petition in the Bankruptcy Court seeking leave to sell at private sale all the assets of Wilkes Barre Steam Heat Company, including all the right, title and interest of the bankrupt and the Trustees in the escrow fund. Notice of the filing of the petition and the hearing scheduled before the Bankruptcy Judge on August 16, 1973 was given to counsel for Ric-Wil, who attended the hearing and made no objection. At the close of the hearing the Bankruptcy Judge announced that his decision was to grant the Trustees' petition to sell at private sale, and counsel for Ric-Wil took no exception. On August 20, 1973 the Bankruptcy Judge entered an Order approving the sale of all the assets for the sum of $2,740,000. Specifically included in the sale was all of the right, title and interest of the bankrupt and the Trustees in the escrow fund. The Order of August 20, 1973 provided that the purchaser would be entitled to withdraw its bid if a review of the Order was sought. However, no review of the Order was ever sought, and on September 26, 1973 the Trustees completed the sale pursuant to the terms of the Order. It is admitted that Ric-Wil did not receive a copy of the August 20th Order.

Since the date of the approval of the sale, the Bank has permitted withdrawal of a substantial portion of the escrow fund by the purchaser for the purpose of making repairs and improvements to the steam heat system in Wilkes Barre. The sum of $80,000 now remains in the escrow fund.

On October 22, 1973, more than two months after the date of the Bankruptcy Court's approval of the sale, and about a month after consummation of the sale, Ric-Wil petitioned the Bankruptcy Court for an order enjoining withdrawals from the escrow fund. The Bankruptcy Court denied the petition. On October 24, 1973 Ric-Wil filed a motion with this Court to enjoin further withdrawals from the escrow fund pending the outcome of the appeal it took on September 13, 1973 from this Court's Order of August 17, 1973, in which we affirmed Judge Goldhaber's opinion holding that the escrow fund was not a trust fund.

Ric-Wil contends that an injunction pending appeal should issue because sums have been withdrawn from the escrow fund contrary to orders of the Bankruptcy Court and alleges that it will suffer irreparable injury if an injunction is not issued. Ric-Wil claims that it is entitled to an injunction pending appeal as a matter of right, pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, upon the filing of an appropriate supersedeas bond. The purchasers at the Bankruptcy sale, the Commonwealth, and the Trustees in Bankruptcy contend it is now too late for the issuance of a stay or injunction pending appeal, and deny that Ric-Wil is entitled to an injunction pending appeal. They claim that the sale and the withdrawals from the fund were entirely proper, since Ric-Wil never sought to stay the Bankruptcy Court proceedings by obtaining either a stay or injunction pending appeal, and further claim that Ric-Wil failed to file a petition for review of the Bankruptcy Court's order approving the sale.

Ric-Wil contends that it is entitled to an injunction pending appeal as a matter of right upon filing an appropriate supersedeas bond, pursuant to Rule 62(d), Federal Rules of Civil Procedure. There is some question as to whether Rule 62(d) governs the instant motion by Ric-Wil for an injunction pending appeal. It could be that Rule 62(c) rather than 62(d) is the applicable rule. Or it could be that Section 39(c) of the Bankruptcy Act, 11 U.S.C. 67(c) and Bankruptcy Rule 805 are applicable. We shall, however, make a determination as to whether Ric-Wil is now entitled to a stay or injunctive relief pursuant to any one of the above procedures.

## RULE 62(d), FEDERAL RULES OF CIVIL PROCEDURE

Viewing the motion under Rule 62(d) of the Federal Rules of Civil Procedure, we are of the opinion that it is now too late for Ric-Wil to seek an injunction against further withdrawals from the escrow fund. Rule 62(d) provides:

(d) *Stay Upon Appeal.* When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Subject to the exceptions contained in Rule 62(a), an appellant can obtain a stay upon appeal as a matter of right pursuant to Rule 62(d) upon the filing and approval of an appropriate supersedeas bond. In Re Federal Facilities Realty Trust, 227 F.2d 651, 655 (7th Cir. 1955); 7 Moore's Federal Practice; ¶ 62.06 (2d ed. 1972).

The sale of all the right, title and interest of the bankrupt and the Trustees in Bankruptcy in the escrow fund and the disbursements from the fund were, and are, completely proper since no stay or injunction pending appeal was ever granted nor was a supersedeas bond ever approved prior to the Bankruptcy Court's approval of the sale on August 20, 1973. It is clear that a party seeking to avoid any impairment in its ability to realize the benefit of a successful appeal relating to the disposition of a subsidiary portion of the proceedings before the Court must seek to stay the progress of the proceedings by

obtaining a stay or injunction pending appeal. Absent the grant of a stay or injunction and the approval of a bond, the *status quo* of the litigation is not fixed and the litigation is free to continue. Thus a party who chooses to appeal but who fails to obtain a stay or injunction pending appeal risks losing its ability to realize the benefit of a successful appeal. *See, e. g.,* Sterling v. Blackwelder, 405 F.2d 884 (4th Cir. 1969); Knapp v. McFarland, 462 F.2d 935, 943 n. 7 (2d Cir. 1972); In Re Spier Aircraft Corp., 137 F.2d 736 (3d Cir. 1943); Wright & Miller, Federal Practice and Procedure § 2904.

■ The purpose of obtaining a stay or injunction pending appeal is to preserve the *status quo* in the litigation. Ric-Wil never sought to preserve the *status quo* in this litigation, and the Trustees proceeded with a sale of whatever right, title and interest the bankrupt and the Trustees had in the escrow fund. It is now too late to stay the order or enjoin the enforcement of the order in view of the fact that the sale in bankruptcy has been consummated. It is somewhat like attempting to stay a judgment after an execution sale has been held pursuant thereto. Rule 62(d) provides that "the bond may be given at or after the time of filing the notice of appeal . . ." but certainly this language cannot be interpreted as meaning after an order or judgment has ripened into the consummation of a sale. Thus, it is now too late for Ric-Wil to stay this Court's Order of August 17, 1973 upon filing and obtaining approval of a supersedeas bond, pursuant to Rule 62(d), Federal Rules of Civil Procedure.

## RULE 62(c), FEDERAL RULES OF CIVIL PROCEDURE

■ Ric-Wil is not entitled to an injunction pending appeal pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. Rule 62(c) provides, in pertinent part:

Injunction Pending Appeal. When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

There are four prerequisites for the issuance of an injunction pending appeal pursuant to Rule 62(c): (1) the moving party must make a strong showing that it is likely to prevail on the merits of its appeal; (2) the moving party must establish that it will suffer irreparable injury if the injunction is denied; (3) other parties must not be substantially harmed if the injunction is issued; and (4) the issuance of the injunction must not be contrary to the public interest. Long v. Robinson, 432 F.2d 977 (4th Cir. 1970); Belcher v. Birmingham, 395 F.2d 685 (5th Cir. 1968); Eastern Air Lines, Inc. v. Civil Aeronautics Board, 261 F.2d 830 (2d Cir. 1958); Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

As stated above, the first prerequisite is whether Ric-Wil has made a strong showing that it is likely to prevail on the merits of its appeal. The Court is compelled to find that it has not made such a showing. The Bankruptcy Court has considered the claim of Ric-Wil on the merits and held in a well reasoned opinion by Judge Goldhaber that there is no merit to Ric-Wil's contention that the so-called escrow fund is a trust fund for the benefit of Ric-Wil and other creditors similarly situated, and this Court affirmed. Ric-Wil has not presented any argument to the Court which would lead us to conclude that it is likely to obtain a contrary result in the Court of Appeals.

The second prerequisite for the issuance of an injunction pending appeal is a showing by the moving party that it will suffer irreparable injury if the requested relief is denied. While Ric-Wil may suffer irreparable injury if an injunction pending appeal is denied, this

appears to be the only one of the four prerequisites which it is able to establish.

As previously mentioned, the third prerequisite for the issuance of an injunction pending appeal is that other parties will not be substantially harmed if such relief issues. The record in these proceedings clearly establishes that the purchaser would be substantially harmed if the injunction is granted. The purchaser of all the right, title and interest of the bankrupt and the Trustees in the escrow fund has relied on the availability of the fund to provide for the continued operation of the steam heat system in Wilkes Barre, and the record indicates that the purchaser might be forced to cease operating the steam heat plant if the injunction issues.

The fourth prerequisite is that the issuance of the injunction must not be contrary to the public interest. Certainly, the public interest is not served by granting an injunction which would result in some residents of Wilkes Barre being without heat during the cold days ahead. Accordingly, the Court concludes that Ric-Wil is not entitled to an injunction pending appeal pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. In addition, of course, it also is apparent that Ric-Wil is "too late" for any stay pursuant to Rule 62 as previously explained in our discussion of Rule 62(d).

## SECTION 39(c) OF THE BANK-RUPTCY ACT AND BANK-RUPTCY RULE 805

Ric-Wil is not entitled to an injunction pending appeal pursuant to Section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c), and Bankruptcy Rule 805. Section 39(c) of the Bankruptcy Act provides, in pertinent part:

Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest.

Bankruptcy Rule 805 provides, in pertinent part:

A motion for a stay of the judgment or order of a referee, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance to the referee. Notwithstanding Rule 762 . . . the referee may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest.

Under Section 39(c) of the Bankruptcy Act and Bankruptcy Rule 805, the issuance of an injunction pending appeal is within the discretion of the Court. See Advisory Committee's Note to Bankruptcy Rule 762. We have discussed in our analysis of the applicability of Rule 62(c) of the Federal Rules of Civil Procedure the criteria which apply when an injunction pending appeal is requested. The same criteria are applicable to injunctions sought pursuant to Section 39(c) and Bankruptcy Rule 805. Suffice it to say that the issuance of an injunction pending appeal at this time in this case is inappropriate.

## FINALITY OF ORDER AUTHORIZING SALE OF ASSETS OF WILKES BARRE STEAM HEAT COMPANY

There is still another reason why Ric-Wil cannot obtain the stay or injunctive relief which it now seeks. Ric-Wil did not file a petition for review of the Bankruptcy Court's order within ten days of August 20, 1973. This order is now final, and is not subject to attack. This conclusion is mandated by Section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c), which provides in part as follows:

A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such or-

der by a judge . . . . Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final . . . .

If neither a petition for review nor a request for an extension of time within which to file a petition for review is filed within the ten days following the entry of a Bankruptcy Judge's order, the order becomes final. Clark v. Milens, 28 F.2d 457 (9th Cir. 1928); In Re Abilene Flour Mills Co., 439 F.2d 937 (10th Cir. 1971). This rule is inflexible and applies regardless of whether or not the aggrieved party actually received a copy of the order complained of, for it is incumbent upon interested parties to keep track of the record of the proceedings. In Re General Insecticide Co., 403 F.2d 629 (2d Cir. 1968); In Re Robinson, 42 F.Supp. 342 (D.Mass.1941). Thus, the order of the Bankruptcy Judge from which no petition for review is taken is not only final, it is *res adjudicata* and immune from collateral attack. Mavity v. Associates Discount Corp., 320 F.2d 133 (5th Cir. 1963), cert. denied 376 U.S. 920, 84 S.Ct. 677, 11 L.Ed.2d 615; In Re Acme Furnace Fitting Co., 302 F.2d 318 (7th Cir. 1962), cert. denied 371 U.S. 853, 83 S.Ct. 89, 9 L.Ed.2d 88; Collier on Bankruptcy ¶ 39.29 (14th ed. 1972). The finality of a Bankruptcy Court sale is not subject to inquiry or impeachment in any collateral proceeding. Slocum v. Edwards, 168 F.2d 627 (2d Cir. 1948); Collier on Bankruptcy ¶ 70.98 (14th ed. 1972). A bankruptcy sale enjoys a privileged status inasmuch as it is the declared policy of our courts to protect and uphold a judicial sale wherever practicable. Collier on Bankruptcy ¶ 70.97 (14th ed. 1972).

Certainly Rules 62(c) and 62(d) of the Federal Rules of Civil Procedure and Section 39(c) of the Bankruptcy Act and Bankruptcy Rule 805 cannot be interpreted to authorize a stay of an order approving a sale where no petition for review has been filed.

## CONCLUSION

The issue of the remedies available, if any, to Ric-Wil should it prevail upon appeal is not before this Court. We conclude, however, that Ric-Wil is not now entitled to a stay or injunctive relief pending the outcome of its appeal to the United States Court of Appeals.

This Memorandum and Order shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure.