In re D. H. OVERMYER TELECASTING CO., INC., Debtor.

HADAR LEASING INTERNATIONAL CO., INC., et al., Plaintiffs,

v.

D. H. OVERMYER TELECASTING CO., INC., et al., Defendants.

Bankruptcy No. B81-00506.
Adv. No. B81-1005.

United States Bankruptcy Court,
N. D. Ohio, E. D.

March 1, 1982.

John Silas Hopkins, III, and William S. Eggeling, Ropes & Gray, Boston, Mass. and Susan B. Collins and Joseph Patchan, Baker & Hostetler, Cleveland, Ohio, for The First Nat. Bank of Boston.

William T. Smith, Calfee, Halter & Griswold and Harry W. Greenfield, Javitch, Eisen & Greenwald Co., L.P.A., Cleveland, Ohio, for Hadar Leasing Intern. Co. Inc.

James M. Wilsman and Kevin T. Duffy, Parks, Eisele, Bates & Wilsman, Cleveland, Ohio, for D. H. Overmyer Telecasting Co., Inc.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for Daniel H. Overmyer.

David O. Simon, Dettelbach & Sicherman, Cleveland, Ohio, for Creditors' Committee of D. H. Overmyer Telecasting Co., Inc.

MEMORANDUM OF OPINION AND ORDER DENYING MOTION OF DANIEL H. OVERMYER FOR STAY PENDING APPEALS

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on the motion of Daniel H. Overmyer for emergency stay of proceedings pending appeal, the evidence and argument of counsel.

*Findings of Fact*

Based upon the evidence presently before me, the Court finds that:

1. D. H. Overmyer Telecasting Co., Inc. ("Telecasting") is a Chapter 11 debtor in this Court and has been since February 6, 1981. It was previously in a Chapter XI reorganization proceeding in the Southern District of New York for almost five years, and many of its creditors have claims that have been unpaid for that long.

2. Its former affiliate, Hadar Leasing International Co., Inc. ("Hadar"), is also a Chapter 11 debtor in this Court.

3. Hadar initiated an adversary proceeding in this Court against Telecasting, asserting rights in certain property and equipment in the possession of Telecasting.

4. This Court authorized The First National Bank of Boston ("FNBB") to participate in this case as an intervening defendant as of right, pursuant to 11 U.S.C. § 1109(b),[1] based upon FNBB's status as a pledgee and record holder of all the capital stock of Telecasting.

5. Telecasting and FNBB asserted claims against Hadar based upon their contention that it, Telecasting, and a number of other entities were formerly commonly controlled by Mr. Daniel H. Overmyer ("Overmyer"), including the period Telecasting was in the New York Chapter XI proceeding. All of these entities listed their business headquarters as centered in the same suite of offices at 3 Park Avenue, New York City.

6. These defendants alleged that Overmyer, by and through his various entities, had, during and prior to the proceedings for an arrangement under former Chapter XI, acted to fraudulently remove the assets of Telecasting to the detriment of its estate and, therefore, its creditors, including specifically FNBB which asserted that the Overmyer entities had been thus used to prevent it from being able to recover obligations owed to it as a result of borrowings by the Overmyer entities.

7. The defendants sought affirmative relief in the form of, *inter alia* : a determination of the monies rightfully owing to FNBB, and the imposition of constructive trusts upon the assets of the Overmyer entities in order to restore those assets to their rightful place for the benefit of the Telecasting estate and its creditors. These counterclaims were directly related to and intertwined with the claims initially brought by Hadar, and, if proven by the evidence to be adduced at trial, would serve to materially benefit the Telecasting estate.

8. From the inception of the case, it was represented by plaintiff that Daniel H. Overmyer was neither controlled by nor in control of Hadar. It was further represented that other alleged Overmyer entities had no significant connection with Hadar.

9. Nevertheless, subsequently Overmyer personally and two of the alleged "Overmyer entities", D. H. Overmyer Co., Inc. (Ohio) and Overmyer Distribution Services, moved for leave to intervene in the adversary proceeding to assert with Hadar claims and defenses against Telecasting and FNBB. These proposed intervenors represented to the Court, in their moving papers and on numerous occasions, that their intervention was necessary so that they might adequately protect their interests in the matters then pending. They also represented that their intervention would not disrupt or delay the ongoing litigation, which was the subject of an existing pre-trial order regarding the speedy completion of discovery and the scheduling of the trial.

10. Although the Court did not formally enter an order granting the motions for leave to intervene until December 24, 1981, the Overmyer intervenors were represented throughout this period by the same counsel, who participated fully in all pretrial discovery and other proceedings.[2]

---

1. 11 U.S.C. § 1109(b): "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

2. Wm. Tousley Smith, and Harry W. Greenfield, attorneys for Hadar, advised the Court on or about November 24, 1981, that they were also representing Daniel H. Overmyer, D. H. Overmyer Co., Inc. (Ohio) and Overmyer Distribution Services. Immediately thereafter, the Court advised said counsel that he thought they might have a conflict representing Daniel H. Overmyer, and should reconsider such representation. On December 4, 1981, Harry W. Greenfield withdrew as one of the counsel for Daniel H. Overmyer. On February 3, 1982, Wm. Tousley Smith also withdrew as counsel for Daniel H. Overmyer. Ronald A. Rispo and David Arnold were substituted as counsel for Daniel H. Overmyer on January 25, 1982.

11. Due to an initial error in the terms of the Court's intervention orders, the Overmyer intervenors first filed pleadings in the nature of answers and counterclaims, rather than complaints, as was appropriate in their status as plaintiffs alongside Hadar. This error was promptly communicated to the intervenor's counsel, but when they failed to properly revise their pleadings after a number of weeks delay, the Court finally had to enter an order at the request of defendants requiring them to do so. These pleadings were still not filed until just prior to the scheduled trial date.

12. After the close of discovery, David Arnold and Ronald A. Rispo entered appearances for Daniel H. Overmyer. Although this was their first formal appearance in this case for Mr. Overmyer, they had represented him and other persons related to or affiliated with him in other directly related litigation pending before this Court. They had, moreover, participated actively in the pre-trial proceedings in this adversary proceeding, including appearing for him at hearings and conferences in chambers regarding the proposed intervention and representing Overmyer witnesses during depositions and document production undertaken in the pre-trial discovery period.

13. After Overmyer's personal counsel changed, a new complaint was submitted on his behalf without leave of Court. This complaint was ordered stricken, and Overmyer did not file a proper pleading until the week immediately preceding the scheduled trial.

14. Although the scheduled trial date of February 22, 1982, has long been established, the Overmyer parties repeatedly sought to reschedule the trial date, to reopen or to continue discovery or otherwise to postpone the trial. These requests have been both informal and by formal motions or other paper. The Court has on all occasions responded to all counsel for all of the parties that the case was going to trial on

February 22, 1982. Further, the Court has rearranged its docket of other matters in preparation for this trial, and has arranged for numerous other matters to be heard by another bankruptcy judge during the time set aside for the trial.

15. The Court has also been extensively exposed to Overmyer and to the litigation techniques employed by him and his affiliates in several other adversary proceedings or contested matters heard by it, and has been directed to the findings of other courts regarding such matters. *See, e.g. Overmyer v. Fidelity and Deposit Co. of Maryland*, 554 F.2d 539 (2d Cir. 1977).[3] The Court is also aware that D. H. Overmyer Co., Inc. (Ohio) has had arrangement proceedings pending in New York for over eight years, and its parent, The Overmyer Company, has had similar proceedings pending in that Court for over six years. Both entities are controlled by Overmyer.

16. The case is now on trial and five days of testimony have been completed from the first witness called by Hadar. That witness has testified that, *inter alia*, Hadar is and has always been controlled by Daniel H. Overmyer, as have been all of the other entities doing business from 3 Park Avenue, with the present exception of Telecasting which remains under the control of directors elected by FNBB under the supervision of this Court.

17. If this trial were now to be stayed, it would result in severe harm to the parties, as well as to the Court. The defendants have large ongoing costs, which will not abate until this trial is completed and which cannot be significantly reduced if the trial were to be stayed. The creditors interested in the two Chapter 11 estates, moreover, have a very strong interest in seeing this litigation completed promptly and their claims attended to. In addition, Telecasting operates a television station in Toledo as licensee of the FCC. The public and, particularly, the residents of its viewing area have an interest in the speedy imple-

---

3. The Court in the first sentence of its opinion, at page 540, stated: "This appeal reveals a crass misuse of both the state and federal judi- cial systems to avoid the payment of a judgment."

mentation of a plan. The Creditors' Committee of Telecasting has opposed any further delay.

18. Delay is not in the public interest, since it will inevitably further postpone the completion of the reorganization proceedings.

19. Plaintiffs have not shown that they will suffer irreparable harm in the event that the trial is not stayed.

20. Any harm to the plaintiffs from any errors in the Court's rulings can be effectively remedied upon an appeal after the judgment is entered following the trial of the adversary proceeding. The outcome of that proceeding, moreover, may well moot many of the issues sought to be presented by the presently attempted appeals. Thus, considerations of judicial economy dictate that a stay is inadvisable.

21. The multiple appeals advanced by Overmyer in support of the motion for emergency stay do not appear to be well taken. They are all interlocutory. Some appear to be frivolous.

### Conclusions of Law

Overmyer seeks a stay of this trial pursuant to Rule 805 of the Rules of Bankruptcy Procedure.[4] The majority of cases considering stays pending appeal have applied the following four factors in deciding whether a stay should issue:

(1) The likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2) Irreparable injury to the moving party unless the stay is granted;

(3) Substantial harm to other interested parties; and

(4) Harm to the public interest.[5]

Applying these four factors to the present case, the Court finds that:

(1) Overmyer has not made a showing that he is likely to succeed on the merits of the interlocutory appeals;

(2) Overmyer has failed to establish that irreparable harm will occur absent a stay;

(3) Substantial harm is likely to occur to other interested parties if a stay is granted, and Overmyer has failed to meet his burden of proving the contrary; and

(4) Granting a stay in this case will harm the chances of successfully completing two Chapter 11 reorganization proceedings and would be harmful to the public interest.

To the extent that this Court may have some discretion under Rule 805 to stay this trial, it hereby declines to do so.[6] The rights of Overmyer are adequately protected by other legal remedies, and substantial costs to other parties would be incurred by a delay in this trial at this time.

It is, therefore, ORDERED, ADJUDGED and DECREED that the motion for emergency stay is hereby denied.

IT IS SO ORDERED.

---

**4.** Rule 805, in pertinent part, provides: "A motion for a stay of the judgment or order of a referee, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance to the referee. Notwithstanding Rule 762 but subject to the power of the district court reserved hereinafter, the referee may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the referee, may be made to the district court, but the motion shall show why the relief, modification, or termination was not obtained from the referee. The district court may condition the relief it grants under this rule upon the filing of a bond or other appropriate security with the referee."

**5.** *See In re Hotel Associates, Inc.,* 7 B.R. 130 (Bkrtcy.E.D.Pa.1980); *In re Sung H. Lim,* 7 B.R. 319 (Bkrtcy.D.Hawaii 1980); *In re Tolco Properties, Inc.,* 6 B.R. 490 (Bkrtcy.E.D.Va. 1980); *In re Lewis Jones, Inc.,* 369 F.Supp. 111 (D.C.E.D.Pa.1973); *In re White Motor,* 11 B.R. 294, 7 B.C.D. 885 (Bkrtcy.N.D.Ohio 1981).

**6.** *See In re Neisner Bros., Inc.,* 10 B.R. 299 (Bkrtcy.S.D.N.Y.1981).